2000 OK CIV APP 115

**David Bruce McDERMOTT, Appellant,**

v.

**SENTRY LIFE INSURANCE COMPANY, INC., and Steven A. Marzett, as Agent of Sentry Life Insurance Company, Inc., Appellees.**

**No. 89,707.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 16, 2000.

Certiorari Denied Oct. 10, 2000.

As Corrected Jan. 24, 2001.

Clifford N. Ribner, Tulsa, Oklahoma, for Appellant.

Paula J. Quillin, Jody R. Nathan, Feldman Franden Woodard, Farris & Taylor, Tulsa, Oklahoma, Timothy A. Carney, Travis M. Dodd, Gable Gotwals Mock Schwabe, Kihle & Gaberino, Tulsa, Oklahoma, for Appellees.

## OPINION ON REMAND

TAYLOR, J.

¶ 1 We review this matter on reassignment from the Oklahoma Supreme Court pursuant to its order of April 12, 1999, vacating our opinion issued June 9, 1998, and directing us to reconsider this cause based upon the full trial court record and additional briefs submitted since the date of our opinion. Based on reconsideration of the record, the parties' briefs, the amicus brief submitted by the United States Department of Labor, and the applicable law, we now reverse the decision of the trial court on the issue of preemption and remand for further proceedings.

## STANDARD OF REVIEW

■ ¶ 2 Plaintiff, David Bruce McDermott, filed this appeal seeking review of the trial court's order granting summary judgment in favor of Defendants, Sentry Life Insurance Company (Sentry) and Steven A. Marzett, based on preemption by the Employee Retirement Income Security Act, 29 U.S.C.A. §§ 1001 through 1461 (West 1999) (ERISA). The issue presented is whether ERISA preempts an independent contractor's state-law claims against an insurance company and its sales agent, based on deceptive practices in the sale of a group insurance policy to an employer, where the employer purchased the policy in reliance on the alleged representation that the independent contractor would be covered under the policy and the insurer later denies coverage based on the contractor's status as a non-employee. The question of ERISA preemption involves a question of law, and we review the trial court's ruling on the issue de novo, i.e., without deference to the trial court's decision. *See Airparts Co. v. Custom Benefit Serv. of Austin,* 28 F.3d 1062, 1064 (10th Cir.1994). We find that preemption does not bar Plaintiff's claim.

## DISCUSSION

### Plaintiff's State–Law Causes of Action Are Not Preempted by ERISA

■ ¶ 3 ERISA has been described as a comprehensive statute "designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). The preemption clause—included by Congress to implement ERISA's goal and purpose—is recognized as "deliberately expansive" and "conspicuous for its breadth." *See FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The clause provides that, with certain limited exceptions, the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C.A. § 1144(a). State-law based claims developed under the common law are among those "state laws" potentially subject to preemption. 29 U.S.C.A. § 1144(c)(1); *UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 365 n. 1, 119 S.Ct. 1380, 1386 n. 1, 143 L.Ed.2d 462 (1999).

¶ 4 As noted in our previous opinion, Plaintiff was an outside salesman for Eversharp Tool & Cutter Company (Eversharp), and was paid on a commission basis. From 1983 or 1984 through February 1988, as part of Plaintiff's compensation for his services, Eversharp paid the premiums to cover Plaintiff on a group health insurance policy with Mutual Benefit Life Insurance Company.

¶ 5 In March 1988, Eversharp changed insurance carriers to Defendant Sentry. It is undisputed that Eversharp intended, when it purchased the Sentry policy, to "replace the previous employee group coverage that was in place" and to obtain from Sentry coverage that would include Plaintiff.[1] Testi-

---

1. Sentry's "Motion for Partial Summary Judgment on Issue of ERISA Preemption," filed December 19, 1996.

mony indicated it was a condition of Eversharp's decision to change insurance carriers that all of the individuals who had been covered by Eversharp's policy with Mutual Benefit also would be covered by the Sentry policy, and that Plaintiff was one of the individuals for whom Eversharp wanted coverage.[2]

¶6 Defendant Marzett, Sentry's agent, sold Eversharp the Sentry group health insurance policy. Douglas Turner, Eversharp's president, testified that Marzett approached Eversharp about changing its life and health policies to Sentry, and that Marzett was aware Eversharp already had workers' compensation insurance with Sentry.[3] Plaintiff's evidence further suggested that, after Marzett was advised by Plaintiff's father (because Plaintiff was not in the office at the same time Marzett was there) of Plaintiff's working hours and job description, Marzett filled out Plaintiff's insurance application. Marzett indicated on the application that Plaintiff was a full-time employee who worked at least 30 hours a week in the office.[4] Marzett then allegedly either assured Eversharp that Plaintiff was eligible, or stated he would check with Sentry to be sure that Plaintiff was covered and get back to Eversharp if there was a problem. Ultimately, Sentry issued the policy listing Plaintiff as an insured. Plaintiff received an insurance card, and, believing he was covered by Sentry, did not obtain other individual coverage for himself or his family.

¶7 On May 16, 1988, Sentry paid a loss under the policy on behalf of Plaintiff. Then, on May 19, 1988, Plaintiff was seriously injured in an automobile accident, resulting in extensive medical expenses. According to Marzett's deposition testimony, Sentry initiated an investigation of Plaintiff's employment status after Plaintiff made the latter,

larger claim for these expenses. Sentry's investi_tion led it to conclude Plaintiff was not a full-time employee within the coverage of the group policy. The company declined to pay his claim, and attempted to return the premiums for Plaintiff's policy to Eversharp.

¶8 Plaintiff brought this action, initially alleging he was an "employee" who had been wrongfully denied coverage by Sentry. Defendants moved for summary judgment, asserting Plaintiff was not an employee covered by the Eversharp policy, that the policy was an employee benefits plan under ERISA, and that Plaintiff's claims were preempted. The trial court found in an interlocutory order that the group health policy underwritten by Sentry was an ERISA plan. *It further held that Plaintiff was not an insured under the policy nor was he insured under the Eversharp plan.* The interlocutory order found Plaintiff's breach of contract claim was preempted by ERISA. However, it denied Defendants' motion for summary judgment on Plaintiff's claims of negligence and fraud, except to the extent they were based on "representations or omissions" as to how the Eversharp plan would be administered, "because such allegations are preempted."

¶9 Plaintiff filed a "Second Amended Petition," alleging he was a self-employed independent contractor and not an employee. He asserted claims sounding in breach of contract/promissory estoppel, negligence, constructive fraud, and deceit, based on Sentry and Marzett's allegedly deceptive practices designed to induce Eversharp to purchase Sentry insurance.

¶10 Eventually, Defendants filed motions for summary judgment that again raised ERISA preemption. The trial court found that "the duties and breaches alleged by Plaintiff concern representations about the

**2.** Douglas C. Turner deposition of October 23, 1995.

**3.** According to Turner, the workers' compensation policy covered "just the people that worked at the premises that we were located in."

**4.** Plaintiff's father, Barr McDermott, is an Eversharp employee, and testified he spoke to Marzett about Plaintiff's eligibility. Speaking of his conversation with Marzett, he said "it was made explicitly clear that [Plaintiff] was a commis-

sioned salesman or a free agent, and that he was paid only upon his production...." He said Marzett indicated there would not be a problem with Plaintiff's eligibility under the policy. "The question was asked as to how many hours he put in, and I said, that is a very good question, because when you're out on the road, who knows how many hours is put in for a given person in a given day." We also note the application form lists Plaintiff with a Dallas, Texas, home address.

coverage of the plan and responsibilities of the Defendants as a result of their sale and issuance of the plan." The court concluded that Plaintiff's claims, therefore, "related to" an ERISA plan and were preempted by federal law. Because ERISA provides no remedy to Plaintiff,[5] the court entered summary judgment in favor of Defendants and overruled Plaintiff's motion to reconsider.

¶ 11 Plaintiff appealed and submitted an abbreviated record pursuant to the summary procedure of Supreme Court Rule 1.36, 12 O.S. Supp.1999, ch. 15, app. He asserted that ERISA is irrelevant to Plaintiff's claims, because Plaintiff was not an employee of Eversharp and had no ERISA-regulated relationship with Eversharp or the group health insurance plan.[6] Plaintiff also alleged error in the trial court's order denying Plaintiff permission to amend his pleadings to add an additional party defendant.

¶ 12 In our opinion of January 9, 1998 (now vacated), we affirmed the trial court's decision. Relying primarily on *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Wilcott v. Matlack, Inc.*, 64 F.3d 1458 (10th Cir.1995), we reasoned that, even though Plaintiff was not an Eversharp employee, his claims were nonetheless preempted because, regardless of Plaintiff's status, the gravamen of his tort and contract causes of action "related to" Eversharp's ERISA plan.

¶ 13 The Oklahoma Supreme Court granted certiorari and permitted the United States Secretary of Labor (United States) to file a brief as amicus curiae supporting Plaintiff. The supreme court thereafter vacated our opinion and reassigned this case, finding that we should be given the benefit of the full trial court record and the amicus brief in deciding whether preemption applies.

¶ 14 The United States joins Plaintiff's argument that, although ERISA is intended to preempt claims based on state law brought by ERISA plan "participants, beneficiaries and fiduciaries," no ERISA-related purpose is furthered by preempting the claim of a third party who lacks standing to sue under ERISA, but who has been injured by conduct of an ERISA plan insurer. In other words, they argue an action filed by a non-participant against an insurance company that funds an ERISA plan is not "related to" an ERISA plan so as to be preempted simply because the insurance policy funds the plan. Preemption does not apply if its application would not further an ERISA-related purpose, or if allowing the state-law claim would not disrupt the intent of Congress when it enacted ERISA.

¶ 15 Neither the United States Supreme Court nor the Oklahoma Supreme Court has addressed the scope of ERISA preemption under the precise situation presented here. Federal appellate case law, however, supports the view that a state-law claim by a non-participant who has no remedy under ERISA is not preempted. In *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172 (5th Cir.1994), the Fifth Circuit Court of Appeals faced a closely analogous situation. An independent contractor who believed he was covered under an employer's group policy was injured while working. The insurer, initially believing that the contractor was an employee covered by the policy, began paying benefits but discontinued payment when it discovered the contractor's true status. It then negotiated a settlement with the contractor on terms extremely favorable to the insurer. The contractor sued the insurer, alleging claims based on deceptive practices, constructive fraud, duress, and bad faith. The district court dismissed based on ERISA preemption. The Fifth Circuit reversed, holding that, because the contractor was not a plan participant, his claims were not

---

5. Under ERISA's civil enforcement provision, 29 U.S.C.A. § 1132(a), a civil action may be brought only by a plan participant, beneficiary, fiduciary, or by the Secretary of Labor. A "participant" is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C.A. § 1002(7).

6. Plaintiff asserts repeatedly that his claim is not made as a participant in the Eversharp plan, or under the terms of the plan. He concedes he is not covered by the plan and that he cannot claim coverage under the plan.

preempted as they did not "implicate the relationship" of the "traditional ERISA entities"—the employer, the plan, the plan fiduciaries, the plan participants, or the plan beneficiaries. The court stated:

> We do not agree that the claims of an independent contractor "directly affect the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." [Plaintiff] is not a participant in the [employer's] plan.... If [Plaintiff] is not an employee, then he is not an ERISA "participant." ... The claims by a nonparticipant and nonbeneficiary to a plan do not affect the relationship between the traditional ERISA entities. Therefore, such claims are not preempted.

*Id.* at 176–77.

¶ 16 Other federal circuit courts of appeal, including the Tenth Circuit, have reached the same conclusion under analogous circumstances. In *Fugarino v. Hartford Life and Accident Insurance Co.,* 969 F.2d 178 (6th Cir.1992), *cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993), a sole proprietor, his spouse, and his son were not participants in the proprietor's ERISA plan. Therefore, the court reasoned the group health insurance policy covering the proprietor's employees constituted an insurance contract governed by state law as to those three plaintiffs, and they were entitled to "sue under and seek the broader relief provided by state tort law." *Id.* at 186. The Ninth Circuit, in *Harris v. Provident Life and Accident Insurance Co.,* 26 F.3d 930 (9th Cir.1994), dealt with a former employee's claims for breach of contract and misrepresentation. Because the plaintiff had not been shown to be a participant in employer's health care plan, the court stated his claims were not preempted, as "it would be contradictory to rule that state law claims are preempted where the court has already held that the same plaintiffs ... are 'not participants' in the ERISA plan." *Id.* at 934 (quoting *Deller v. Portland Gen. Elec. Co.,* 734 F.Supp. 916, 918 (D.Or.1990).

¶ 17 In *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.,* 944 F.2d 752, 755–56 (10th Cir.1991), the court held a health-care provider's claim for misrepresentation against an insurer was not preempted. Though recognizing "the unlimited 'relate to' language of ERISA's preemption provision, and the expansive interpretation given the phrase by the courts," the court also recognized that the "ultimate touchstone" in deciding whether preemption applies is Congress' purpose in enacting the statute:

> The Act states its purpose as [being] "[T]o protect ... *participants* in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). *See also Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 90, 103 S.Ct. at 2896 (purpose is "to promote the interests of *employees and their beneficiaries* in employee benefit plans"); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (purpose is "to protect *contractually defined benefits* ").

944 F.2d at 755–56 (emphasis added).

¶ 18 Finding that preemption "would stretch the 'connected with or related to' standard too far," the court in *Hospice of Metro Denver* allowed the provider's claim to go forward. *Id.* at 756; *see also Lordmann Enter., Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1533–34 (11th Cir.1994), *cert. denied,* 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995)(non-participant health-care provider's state-law misrepresentation claim against an ERISA health insurance plan administrator did not "relate to" the ERISA plan and, thus, was not preempted).

¶ 19 More recently, in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.,* 170 F.3d 985, 989–92 (10th Cir.1999), the Tenth Circuit utilized slightly different reasoning in holding that a non-participant's claim against a plan's funding insurance company for unfair trade practices and fraudu-

lent inducement was not preempted. The non-participant, an employer, alleged that misrepresentations were made by the insurer in the sale of the policy, and that the employer had purchased the policy based on those representations. The Tenth Circuit's rationale for denying preemption was two-fold: (1) the employer's claim concerned the insurer's conduct *prior to* the effective date of the parties' agreement, and therefore it could not implicate the insurer's role as a "plan fiduciary"; and (2) "allowing preemption would not further Congress' purpose in passing ERISA." *Id.* at 991. The court explained:

> [Plaintiff] is suing [the insurer] *with respect to its pre-plan activity in its role as a seller of insurance, not as an administrator of an employee benefits plan* .... Of the four principal ERISA entities, the employer, the plan, the beneficiaries, and the plan fiduciaries, [the insurer] could only claim to be the last. However, Congress quite logically defined a plan fiduciary in relation to a plan. If no plan exists, by definition plan fiduciaries cannot exist.... That [the insurer] may have later acted as a plan fiduciary does not alter its pre-plan status....

Allowing [plaintiff's] claims to proceed is consistent with Congress' purpose in enacting ERISA, that is, to protect the interests of employees and other beneficiaries of benefit plans and establish uniform standards regulating such plans. *Holding insurers accountable for pre-plan fraud does not affect the administration or calculation of benefits, nor does it alter the required duties of plan fiduciaries* .... Conversely, were ERISA to preempt such claims, "employees, whom Congress sought to protect, [would] find themselves unable to make informed choices regarding available benefit plans." ... We agree with the Eighth Circuit ... that a state's "efforts to prevent sellers of goods and services, including benefit plans, from misrepresenting ... the scope of their services is 'quite remote from the area with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility and the like.' " [quoting *Wilson v. Zoellner*, 114 F.3d 713, 720 (8th Cir.1997) ].....

. . . .

Finally, we are not persuaded that [the insurer's] status as an insurance company mandates preemption.... In enacting ERISA, Congress intended to protect the integrity of employment benefit plans, not insurance companies. It explicitly defined a plan fiduciary in terms of the function it performed for the plan, not whether it was an insurance company. Courts have repeatedly held that insurers are not necessarily ERISA entities....

*Id.* at 991–92 (emphasis added) (citations and footnotes omitted).

■ ¶ 20 Upon review of the additional authorities and materials that are now before us, and on reconsideration of the materials previously submitted, we now concede that our prior analysis of this case did not adequately appreciate the limitations that have been imposed on ERISA's broad preemption language in the interest of remaining consistent with Congress' purpose.[7] Neither *Pilot Life* nor *Wilcott,* on which we relied so heavily in our earlier opinion, dealt with a claim by an ERISA non-participant. The cases we discuss above, on the other hand, specifically concern such claims, and the analysis applied to those claims by the federal appellate courts is persuasive.

¶ 21 The similarities between the cases discussed above and the case at bar are straightforward. As in each of these cases, Plaintiff is a non-participant who is challenging the conduct of an insurance company that funded an ERISA plan. The conduct goes to the relationship—or lack thereof—between a

7.    The [United States] Supreme Court has frequently acknowledged the expansive scope of ERISA preemption ... yet the Court has also noted that this observation provides little aid in determining whether ERISA supersedes state law.... "We simply must go beyond the unhelpful text [of ERISA] and the frustrating difficulty of defining its key term ["relate to"], and look instead to the objectives of [the] ERISA [statutes] as a guide to the scope of the state law that Congress understood would survive." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 989–90 (10th Cir.1999) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995)).

nonparticipant and an insurer funding a plan and does not implicate the relationship of the "traditional" ERISA entities—the employer, the plan, its fiduciaries, its participants, or its beneficiaries. As was the case in *Woodworker's*, the alleged conduct giving rise to Plaintiff's claim occurred before the ERISA plan became effective and concerned the insurer's role as a seller of insurance—not as an administrator or allocator of plan benefits. The conduct alleged is conduct that is not condoned under Oklahoma state law generally and, further, is conduct, that if allowed to go unchallenged, does not further a clear ERISA-related purpose.

¶ 22 As in *Harris*, 26 F.3d 930, the trial court here specifically found that Plaintiff was not covered under the Eversharp plan or by the Sentry policy. We agree with the language in *Harris* that it is "contradictory"—not to mention inequitable—to deny Plaintiff's standing to sue under ERISA and simultaneously preempt his claims under state law, leaving him without a remedy for alleged conduct that is contrary to state law and policy. A conclusion denying preemption of Plaintiff's claim also would be more consistent with existing Oklahoma case law addressing federal preemption, as well as state statutes going to the regulation of insurance carriers and deceptive business or trade practices generally. *See, e.g., Kincade v. Group Health Serv. of Oklahoma, Inc.*, 1997 OK 88, 945 P.2d 485 (holding the Federal Employees Health Benefit Act did not preempt plaintiff's state-law tort action arising out of an insurer's bad-faith refusal to pay a valid claim); 36 O.S.1991 §§ 1201 through 1213 (unfair practices and frauds); 78 O.S.1991 & Supp.1999 §§ 51 through 55 (deceptive trade practices).

¶ 23 Accordingly, we hold that the state-law claims asserted by Plaintiff in his second amended petition—alleging breach of contract/promissory estoppel, negligence, constructive fraud, and deceit—are not preempted by ERISA. The trial court's orders to the contrary are reversed.

■ ¶ 24 Defendants' argument that Plaintiff was a plan participant with standing to sue is not supported in the record. We note, first, that the trial court, in its interlocutory adjudication of December 20, 1991, specifically found that the Sentry "policy" *was* an ERISA "plan," and that Plaintiff was *not* an insured under the policy *or* the plan—in other words, that Plaintiff was not a plan participant. Defendants have never challenged this finding. Further, a "participant" under ERISA by definition is an "employee or former employee of an employer." 29 U.S.C.A. § 1002(7). Defendants stipulated in several trial court motions that Plaintiff was *never* an Eversharp employee.

■ ¶ 25 We also reject Defendants' contention that, regardless of ERISA preemption, the undisputed facts demonstrate Defendants are entitled to summary judgment as a matter of law. The thrust of this argument is that there is no evidence of Defendants' alleged fraud in the record, and therefore Plaintiff's claim must fail in its entirety. We believe the evidence in the record, to which we refer in our discussion above, is sufficient to demonstrate that material issues of fact are in dispute on Plaintiff's theories of deceit and constructive fraud. *See* 15 O.S. 1991 § 59; 76 O.S.1991 §§ 3, 4; *see also McCain v. Combined Communications Corp. of Okla., Inc.*, 1998 OK 94, 975 P.2d 865 (setting forth elements of deceit claim generally); *Pacific Nat'l Fire Ins. Co. v. Smith Bros. Drilling Co.*, 1945 OK 272, 162 P.2d 871 (allegations that agent of insurance company assured company that fire policy for an increased amount over old policy covered additional equipment and that both company's representative and insurer's agent believed in good faith that all property was so covered, were sufficient to allege constructive fraud on insurer's part); *North American Accident Ins. Co. v. Canady*, 1945 OK 285, 163 P.2d 221 (holding that representations of soliciting agent for insurer may bind insurer, and quoting with approval the case of *Hospital Serv. Corp. v. Clifton*, 29 Ala.App. 356, 196 So. 165 (1940), which held that insurer may be bound by representations of coverage even if policy endorsement indicates agent has no authority to vary terms of policy). Moreover, our holding that ERISA does not preempt Plaintiff's state-law claims goes to *all* of Plaintiff's theories of recovery, not just those related to fraud or deceit.

## The Trial Court's Denial of Plaintiff's Motion To Amend His Petition For the Third Time Was Not An Abuse of Discretion

¶ 26 Plaintiff also alleges error in the trial court's denial of his December 1995 motion to amend his petition to add as a party defendant Sentry Insurance, A Mutual Company (SIAMCO), Sentry's parent company. We find no error by the trial court in this ruling.

¶ 27 A motion to amend a petition by leave of court is addressed to the sound discretion of the trial judge, though "leave shall be freely given when justice so requires." 12 O.S. Supp.1999 § 2015(A). A trial court's decision to deny a motion to amend will not be overturned, however, absent a showing of abuse of the court's discretion under the circumstances. *Prough v. Edinger, Inc.*, 1993 OK 130, 862 P.2d 71.

¶ 28 Although " 'outright refusal to grant leave without any justifying reason appearing for the denial' " constitutes abuse of discretion, "there is no abuse if the court relies on a reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment.' " *Prough*, 1993 OK 130, ¶ 9, 862 P.2d at 76 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Thus, a trial court acts within its discretion if a justifying reason exists for the denial of the movant's request.

¶ 29 In the instant case, Plaintiff requested leave to amend to add Sentry's parent company in December 1995, more than seven years after this action was filed. It was the third time Plaintiff had requested leave to amend, with both previous requests having been granted. The only grounds Plaintiff asserted for amendment were that SIAMCO was the sole shareholder of Sentry and that SIAMCO used Sentry merely as an alter-ego for itself. The amendment sought, in other words, to pierce Sentry's corporate veil. Plaintiff's only reason for not adding SIAMCO earlier was that Plaintiff had only recently taken the *first* depositions of Sentry employees in the seven-year history of the case.

¶ 30 We find Plaintiff's delay in seeking to add SIAMCO as a party defendant qualifies as "undue delay," and supports the trial court's denial of Plaintiff's motion. As one court has noted regarding amendments to pleadings, "Although ... leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." *U.S. v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir.1995). As applied here, where Plaintiff did not even take the first depositions of Defendant's employees until more than seven years after suit was filed, the phrase "lack of due diligence" is an understatement. Moreover, allowing Plaintiff leave to again amend his petition to litigate the "corporate veil" issue at this point would only protract—needlessly—these already protracted proceedings, inasmuch as Plaintiff, if he does obtain a judgment against Defendants, may well be able to litigate that issue in execution proceedings, if necessary. *See Green v. Oilwell, Div. of U.S. Steel Corp.*, 1989 OK 7, 767 P.2d 1348; *Sproles v. Gulfcor, Inc.*, 1999 OK CIV APP 81, 987 P.2d 454. The trial court's denial of Plaintiff's motion to amend is therefore affirmed.

### CONCLUSION

¶ 31 Finding that the Plaintiff's state-law based claims are not preempted by ERISA, we reverse the trial court's orders holding otherwise, and remand for further proceedings on Plaintiff's claims as set forth in his Second Amended Petition. We find no abuse of the trial court's discretion in refusing to allow Plaintiff to file a third amended petition, seven years after this action was filed, in order to add another party. The order by the trial court denying the motion to amend is therefore affirmed.

¶ 32 REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE VIEWS EXPRESSED HEREIN.

¶ 33 RAPP, P.J., and STUBBLEFIELD, J. (sitting by designation), concur.